IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ABARCA HEALTH, LLC and PHARMACY INSURANCE CORPORATION OF AMERICA, <br><br> Plaintiffs, <br> v. <br><br> PHARMPIX CORPORATION; HERMINIO JOSÉ CORREA GARCÉS, Jane Doe and the conjugal partnership composed by them; JAIME FIGUEROA TORRES, Mary Doe and the conjugal partnership composed by them; MARTTY MARTINEZ FRATICELLI, Ana Roe and the conjugal partnership composed by them; and MARCOS A. GONZÁLEZ CARBALLO, Susan Roe and the conjugal partnership composed by them, <br><br> Defendants. | Civil No. 11-1218 (BJM) <br><br> Re: Injunctive Relief, Copyright Infringement and Damages; <br><br> PLAINTIFFS REQUEST JURY TRIAL |

## MOTION IN COMPLIANCE WITH COURT ORDER (DOCKET NO. 46) CONCERNING PLAINTIFFS' REQUEST FOR THE PRODUCTION OF SOURCE CODES

**TO THE HONORABLE COURT**:

**COME NOW**, plaintiffs, Abarca Health LLC ("Abarca") and Pharmacy Insurance Corporation of America ("PICA") (collectively the "plaintiffs"), through the undersigned counsel, and respectfully allege and pray as follows:

### PRELIMINARY STATEMENT

This is an action for copyright infringement, unfair competition and other claims as a result of defendants' willful conduct and intentional plan to palm-off and copy Abarca's intellectual property rights and other proprietary information in order to compete in the same

market of pharmacy benefits manager (PBM) services. As set forth in the Verified Complaint (Docket No. 1), the defendants have misappropriated Abarca's copyrighted works in order to create and operate PharmPix Corp.'s ("PharmPix") PBM's business and, then, have unlawfully and unfairly competed against Abarca in the market.

In short, as detailed by plaintiffs in previous filings, certain PharmPix's officials, also defendants in this case, were former directors and high ranking officials at PICA. See Docket No. 4-1. While at PICA, these directors and officials created, developed, and/or worked with all the necessary components and software in order to conduct PICA's PBM business.[1] Once they left PICA, these directors and high ranking officials formed PharmPix to operate and compete in the same PBM market as PICA, with the assistance of other former PICA employees. These defendants, however, have competed unlawfully and unfairly in the same market using PICA's, now Abarca's, protected software and other proprietary information and documents.

For these reasons, plaintiffs request that this Court order the parties (Abarca and PharmPix) to produce their respective claims processor software source codes in the manner set forth below.

**DISCUSSION**

A.   **Applicable Law and Factual Background**

To prevail on a copyright infringement claim, "a party must prove both control of a valid copyright and copying of original elements of the work by the putative infringer." Coquico, Inc.

―――――― x    x ――――――

[1] It is noteworthy that defendants have tried to argue that PICA was not in the PBM business or market in an attempt to condone their illegal acts. However, defendants' exhibits to the Answer to the Complaint and Counterclaim are all that this Court needs to review to conclude that such statements concerning PICA are false. That is, in Exhibit 1 of the Answer to the Complaint and Counterclaim (Docket No. 41-1), defendants Jaime Figueroa, Herminio Correa and Martty Martínez (through an entity named Medical Information Management Corporation) offered to acquire from PICA, among other things, its proprietary software and "[a]ny and all existing government contracts […] commonly referred to as the Prescription Benefits Management (PBM) operation." Docket No. 41-1.

v. Rodríguez-Miranda, 562 F.3d 62, 66 (1st Cir.2009). "Regarding ownership, a certificate of registration from the United States Copyright Office is *prima facie* evidence of a copyright's validity." Softech Worldwide, LLC v. Internet Technology Broadcasting Corp., 2011 U.S. Dist. LEXIS 6831 at *5 (E.D. Va. Jan. 24, 2011). In regards to the requirement of "copying of original elements of the work," this requires a bifurcated analysis. Coquico, Inc., 562 F.3d at 66-67. "First, a plaintiff must prove that the defendant copied the plaintiff's copyrighted work, either directly or through indirect evidence." The Yankee Candle Company, Inc. v. Bridgewater Candle Company, LLC, 259 F.3d 25, 33 (1st Cir. 2001). "Second, 'the plaintiff must prove that the copying of the copyrighted material was so extensive that it rendered the infringing and copyrighted works substantially similar'." Id., citing Segrets, Inc. v. Gillman Knitwear Co., 207 F.3d 56, 60 (1st Cir. 2000).

As the First Circuit has stated, "[p]lagiarists rarely work in the open and direct proof of actual copying is seldom available. To fill that void, the plaintiff may satisfy his obligation indirectly by adducing evidence that the alleged infringer enjoyed access to the copyrighted work and that a sufficient degree of similarity exists between the copyrighted work and the allegedly infringing work to give rise to an inference of actual copying." Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005). This has been referred to by the First Circuit as "probative similarity." Id.

As with the main issue in the instant case, "[s]ource code is often not publicly available. As a result, it can be difficult or impossible for a plaintiff to examine [the] accused source code before some discovery has occurred." Brocade Communications Systems, Inc. v. A10 Networks, Inc., 2011 U.S. Dist. LEXIS 30227 at *26 (N.D. Cal. 2011). Accordingly, "[t]o determine whether an instance of copying is legally actionable, **a side-by-side comparison must be made between the original and the copy** to determine whether a layman would view the two works as

3

'substantially similar'." Seastrunk v. Darwell Integrated Tech., Inc., 2008 U.S. Dist. LEXIS 4413 at *10 (N.D. Tex. 2008) (copyright infringement claim concerning source code).

Further, "copyrighted software may be entirely public and have formal, non-functional components that are part of the protected whole. In copyright litigation, presence of identical elements can be highly probative, even if those elements have no intrinsic value and are publicly known." Clearone Communications, Inc. v. Chiang, 2008 U.S. Dist. LEXIS 41941 at *6 (D. Ut. 2008). Moreover, in the context of a copyright infringement claim concerning the comparison of source codes:

> **[T]he copying of even unprotected elements can have a probative value in determining whether the defendant copied the plaintiff's work. Where a court first extracts all unprotected elements of a work, and only compares protected elements, it deprives itself of the use of probative, and potentially essential, information on the factual issue of copying.**

Id. at *7 (emphasis added).

In Clearone Communications, Inc., the Court concluded that "because these are copyright claims, **the discovery of the *entirety* of the WideBand source code is the most important discovery, as the *degree* and *substantiality* of similarity between the Honeybee Code and the WideBand Code is at issue**." Id. (emphasis added). To this end, it is noteworthy that "a plaintiff can rarely examine the underlying source code of an accused infringing program without resorting to discovery." Miller v. Facebook, Inc., 95 U.S.P.Q. 2d 1822, 2010 U.S. Dist. LEXIS 61715 at *18 (N.D. Cal. 2010) (ruling that the proposed complaint for unlawful copying of plaintiff's copyright was sufficiently alleged); see also Professional Market Research, Inc. v. AC Nielsen Corporation, Civil No. 03-2314 (D.P.R) (Gelpí, J.), Docket No. 137 (ordering the parties to produce their respective source codes in the form in which it normally resides on a portable

laptop computer with no network connection)[2]; Brookhaven Typesetting v. Adobe Sys., 2007 U.S. Dist. LEXIS 62661 at *1-2 (N.D. Cal. 2007) (Plaintiff complained that defendant had not produced the necessary source code for its expert to examine the entire allegedly infringing program and the court ordered defendant to produce any remaining source code, including in runable form, to allow plaintiff's expert to perform the comparison.).

In the case at hand, co-defendants Figueroa, Correa, Martínez and González, all now working for co-defendant PharmPix, held positions at PICA that undoubtedly gave them access to the copyrighted work at issue, "Pharmacy Agent". For example, up until his departure from PICA, co-defendant Figueroa served as PICA's President and board member. Similarly, co-defendant Correa was PICA's Chief Information Officer and board member. Moreover, it was under co-defendant Correa's supervision that the copyrighted work at issue in this case was developed in-house for PICA's pharmacy benefits manager's operations. As to co-defendant González, he was involved in the maintenance and updating of the "Pharmacy Agent" software. Moreover, co-defendant Martínez was PICA's Chief Clinical/Pharmaceutical Officer which constituted a controlling position at PICA", and had access to PICA's various proprietary information.

In view of the above, this Court should have no doubt that the defendants in this case, while working for PICA, enjoyed complete access to PICA's processor that contained the copyrighted software ("Pharmacy Agent"), since they actually were the ones that created or

---

[2] In Professional Market Research, Inc., all parties **agreed** to the appointment of a Special Master and the Court selected Prof. Lee A. Hollaar from the University of Utah to conduct a substantial similarity analysis through the production of the respective source codes. However, contrary to that case, in the instant litigation, the parties have not agreed to the appointment of a special master or court-appointed expert, but have agreed to a Confidentiality and Protective Order that will govern and adequately safeguard the production of the parties' respective source code. See Atpac, Inc. v. Aptitude Solutions, Inc., 2011 U.S. Dist. LEXIS 40043 at *15-16 (E.D. Cal. April 13, 2011) (denying defendants' request for an appointment of a special master because, among other things, "[t]he protective order is already in place and defendants have not shown that it is insufficient to protect the parties' interests.").

worked with it at PICA. Thereafter, when they created the competing entity, PharmPix, all or some of these co-defendants unlawfully and unfairly copied "Pharmacy Agent" in order to use it as is or create unauthorized derivative works thereof for the operations and direct competition against PICA's PBM business, now Abarca. However, again, the owner of the copyrighted work "Pharmacy Agent" is not these co-defendants, but rather the plaintiff in this case, Abarca.

Defendants' access to the copyrighted work has further been corroborated through the unsworn declaration under penalty of perjury of Mr. Scott Domínguez, former PICA employee, who subsequently worked as PharmPix's Informative Architecture and Systems Engineer. While working for co-defendant PharmPix, Mr. Domínguez became aware that PharmPix was using an essentially exact copy of the software developed in-house at PICA, "Pharmacy Agent" (with minor modifications), to operate PharmPix's business of pharmacy benefits information and management company (the exact same line of business that PICA and now Abarca conduct). As a matter of fact, while Mr. Domínguez still worked for PharmPix, he became aware that the program at PharmPix's server was still called "Pharmacy Agent," the same name given to the software when it was developed for PICA. See Statement Under Penalty of Perjury of Scott Domínguez, Docket No. 1, **Exhibit B**, ¶ 11.

In their filings before this Court, defendants have not denied (since they cannot) their complete access to the software at issue, "Pharmacy Agent". Further, none of the defendants contradicts, much less under penalty of perjury, the fact that they unlawfully appropriated plaintiffs' intellectual property and copied the same without its rightful owner's authorization. As a result, there should be no doubt that there is more than enough circumstantial evidence to demonstrate that there has been actual copying by the defendants of "Pharmacy Agent".

B.      **Proposed discovery mechanism of the parties' source codes of the works at issue.**[3]

An expert in this field, Professor Lee A. Hollaar[4] from the University of Utah, has written an article titled "Requesting and Examining Computer Source Code" that may assist the Court in making a final determination on the discovery mechanism that should be used in this case. See **Exhibit A**. In this article, Prof. Hollaar explains that, "[f]or a copyright or trade secret case, your expert will compare the defendant's source code against the plaintiff's to determine if they are substantially similar…". Id., p. 3. Prof. Hollaar further states that "[a] machine-readable version [of the source code] is necessary" to conduct the side-by-side comparison. Id. To this end, while giving examples of how Microsoft has produced source codes in compact discs, Prof. Hollaar adds that "[t]he side producing the source code will be justifiably concerned with its protection, and will likely insist on special conditions regarding its use and handling. **Many of these concerns may already be addressed by the protective order in the case for other highly confidential information**." Id. (emphasis added). Such is the case herein, where plaintiffs and defendants agreed to the Confidentiality and Protective Order, which is already in full force and effect. See Docket Nos. 52 and 55.

As a result of plaintiffs' allegations in the Verified Complaint, as well as the fact that the defendants have not contradicted the same, it is respectfully submitted that, pursuant to the above-mentioned case law, a side-by-side comparison and analysis of the source codes of Abarca's and PharmPix's claims processor software must be immediately made. Such comparison should be made by the parties' expert witnesses, which have the necessary expertise

---

[3] To avoid duplicative filings, plaintiffs incorporate by reference, as if fully set forth herein, all of their arguments contained in the request for expedited discovery at Docket No. 5.

[4] Prof. Lee A. Hollaar has served as an expert (special master) in the evaluation of source codes before this Court. See Professional Market Research, Inc. v. AC Nielsen Corporation, Civil No. 03-2314 (GAG), Docket No. 137.

7

in the field and would be able to clearly explain to the Court the necessary elements of the substantial similarity between the softwares at issue. To this end, "[a]lthough the ultimate determination of whether defendants infringed on plaintiff's copyright may require technical expertise beyond the competency of a layperson or this court, the parties may present their experts' opinions, which is the ordinary procedure in cases involving technical or specialized knowledge beyond the competency of the layperson or the court." Atpac, Inc. v. Aptitude Solutions, Inc., 2011 U.S. Dist. LEXIS 40043 at *16 (E.D. Cal. April 13, 2011); see also Integrated Bar Coding Sys. v. Wemert, 2007 U.S. Dist. LEXIS 9952 at *12 (E.D. Mich. 2007) ("Substantial similarity should be considered from the viewpoint of the intended audience, which in this case, are those with knowledge and expertise in computer programming. Therefore, the Court will rely on the experts' reports to determine if the OrbeSoft source code infringes the QuickTrac copyright.").

Accordingly, and as a starting point to the discovery requested herein, it is important to highlight that the parties have agreed to a joint Confidentiality and Protective Order to protect that parties' intellectual property subject to discovery in this litigation. See Docket Nos. 52 and 55; see also Atpac, Inc., 2011 U.S. Dist. LEXIS 40043 at *15-16 (denying defendants' request for an appointment of a special master because, among other things, "[t]he protective order is already in place and defendants have not shown that it is insufficient to protect the parties' interests."). Again, "it bears noting that [a] plaintiff will presumably require review of the software's source codes in order to establish some of its claims." Id. at *16, fn. 4.

In view of the foregoing, plaintiffs respectfully submit that for expedited discovery purposes, each party should engage the services of an expert witness, as plaintiffs have already done, for the side-by-side comparison and analysis of the respective source codes related to the

parties' claims processor software.[5] Further, as to the production of the parties' source codes, the following mechanism is submitted for the consideration of the Court:[6]

- Each party will produce, directly to the opposing party's expert witness, the entire source code for its claims processor software in an encrypted format (e.g., using TrueCrypt) in a thumb drive, flash drive, compact disc or portable computer (with no network connection), via overnight courier, on or before May 31, 2011.

- By that same date, May 31, 2011, each party will deliver to the opposing party's expert witness -- via email -- the necessary password or key to access the source code.

- Each party's expert witness will conduct a side-by-side comparison of the parties' source codes and prepare the corresponding reports by no later than August 1, 2011.

The discovery mechanism proposed by plaintiffs -- including access and use of the source codes for purposes of this litigation -- will be subject to the Confidentiality and Protective Order adopted by this Court. See Docket Nos. 52 and 55. In other words, any concern that the defendants may have as to the access and use of its intellectual property for purposes of this case, including PharmPix's software source code, have been adequately addressed by the parties through the agreed-upon Confidentiality and Protective Order. Thus, any further attack by the defendants concerning plaintiffs' alleged intentions in seeking the discovery requested herein is without merit. Likewise, any request by the defendants of having the Court appoint a neutral expert or special master, as well as having the source code available only at a neutral site, or to limit the access to the parties' intellectual property (aside from what the Confidentiality and

---

[5] As plaintiffs advanced to the Court during the initial scheduling conference, they have engaged the services of Mr. Philip Greenspun, a computer science professor at the Massachusetts Institute of Technology and who has been an expert witness in multiple federal cases.

[6] The proposal for discovery of the respective source codes has been consulted with plaintiffs' expert witness, Prof. Philip Greenspun, which he has used in multiple cases.

9

Protective Order already contains) will only make more expensive and unnecessarily restrictive and burdensome the expedited discovery that must take place in this case.

### CONCLUSION

As explained in the Verified Complaint and the request for preliminary injunction, it is plaintiffs' position **that co-defendant PharmPix is using an essentially exact copy of Abarca's "Pharmacy Agent" software (with minor modifications)**, to operate PharmPix's PBM business in direct competition with Abarca. See Docket Nos. 1 and 4-1. To this end, the defendants have not denied (because they cannot) that they had full access to Abarca's copyrighted software. Moreover, instead of denying that PharmPix's claims processor software is not a copy from "Pharmacy Agent," defendants merely assail the credibility of Mr. Scott Domínguez and insinuate that Mr. Domínguez is acting for impermissible reasons. Surprisingly, though, they do not directly dispute the facts alleged by Mr. Domínguez; nor submit any admissible evidence that would establish that any of those facts have been misstated. In view of the foregoing, it is essential that a side-by-side comparison of the works at issue be performed by the parties' expert witnesses forthwith, as proposed in this submission, which is the mechanism regularly used in this type of litigation. This way, the Court will be assured that the truth of the matter will be discovered for the ultimate disposition of this case.

WHEREFORE, Plaintiffs respectfully request that this Court: (i) take notice of the foregoing; (ii) order the parties to produce forthwith the entire source code of their respective claims processor software in the manner outlined in this submission; and (iii) any other remedy that this Court deem just and proper.

RESPECTFULLY SUBMITTED.

It is certified that on this same date, a true copy of the foregoing was filed through the Court's CM/ECF system, which will generate a notice to all CM/ECF participants in this case.

In San Juan, Puerto Rico, this 18th day of May, 2011.

**O'NEILL & BORGES**
Attorneys for Plaintiffs
American International Plaza
250 Muñoz Rivera Ave., Suite 800
San Juan, PR  00918-1813
Telephone:  (787) 764-8181
Fax:     (787) 753-8944

s/Carla García-Benítez
Carla García Benítez
USDC-PR No. 203708
carla.garcia@oneillborges.com

s/Mauricio O. Muñiz-Luciano
Mauricio O. Muñiz-Luciano
USDC-PR No. 220914
mauricio.muniz@oneillborges.com

s/Ana Margarita Rodríguez-Rivera
Ana Margarita Rodríguez-Rivera
USDC-PR No. 227503
ana.rodriguez@oneillborges.com