IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ABARCA HEALTH, LLC and PHARMACY INSURANCE CORPORATION OF AMERICA,<br><br>Plaintiffs,<br>v.<br><br>PHARMPIX CORPORATION; HERMINIO JOSÉ CORREA GARCÉS, Jane Doe and the conjugal partnership composed by them; JAIME FIGUEROA TORRES, Mary Doe and the conjugal partnership composed by them; MARTTY MARTINEZ FRATICELLI, Ana Roe and the conjugal partnership composed by them; and MARCOS A. GONZÁLEZ CARBALLO, Susan Roe and the conjugal partnership composed by them,<br><br>Defendants. | CIVIL No. 11-1218 (BJM)<br><br><br><br><br>RE: Injunctive Relief, Copyright Infringement, Unfair Competition and Damages |

**PLAINTIFFS' OPPOSITION TO "DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' REQUEST FOR PRODUCTION OF PROGRAM SOURCE CODE" (Docket No. 58)**

TO THE HONORABLE COURT:

COME NOW plaintiffs, Abarca Health, LLC ("Abarca") and Pharmacy Insurance Corporation of America ("PICA") (collectively "Plaintiffs"), through their undersigned attorneys, and respectfully allege and pray as follows:

**PRELIMINARY STATEMENT**

During the Initial Scheduling Conference held on April 29, 2011, this Court ordered the parties to file simultaneous legal briefs discussing the appropriate mechanism for the production of the source codes of the computer programs which copyrights are at issue in the present case. See, Docket No. 46. Through Docket No. 57, Plaintiffs Abarca and PICA set forth the legal

precedents and arguments that support their position that the source codes be **immediately** produced --albeit with certain confidentiality measures in place-- for evaluation and side-by-side comparison by each of the parties' experts. To the contrary, *Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Request for Production of Program Source Code* (the "Memorandum") fails to comply with this Court's order as it only sets forth an extensive legal diatribe as to why confidentiality measures already agreed to by the parties in this case must be implemented. See, Docket No. 58.

Defendants once again rely on smokescreens and spurious arguments in an effort to prevent --or at least delay-- the discovery of the truth as to their infringing and illegal activities. For lack of better (or any) arguments, Defendants also resort to personal attacks that are utterly irrelevant to the request for the production of source codes and the issues in the instant litigation.

Notwithstanding PharmPix Corp.'s and the other defendants'[1] misleading protestations, there is now significant and clear evidence that PharmPix's program is an unlawful copy of Abarca's copyrighted Pharmacy Agent program. On May 20, 2011, Abarca/PICA lawfully obtained a copy of PharmPix's deposit at the Copyright Office to obtain their much touted Copyright Registration Number TX7-314-220 (see, Docket No. 25-1) and provided it to their expert, Dr. Philip Greenspun, for comparison with the pertinent Abarca programming. After such comparison, Dr. Greenspan opines that "**substantial portions** of the PharmPiX SQL schema or data model, which is the heart of any database application, **were copied from** the Abarca SQL schema" and "the Visual Basic code filed by PharmPiX as the first 25 pages of its copyright registration deposit **was copied** from the Abarca source code." *Expert Report of Philip*

---

[1] For simplicity purposes, all defendants jointly referred to here as "PharmPix".

2

*Greenspun,* Exhibit A, p. 12, ¶¶55-56 (emphasis added). [2] Under such circumstance, this Court should deny Defendants' Memorandum and immediately adopt Plaintiffs' proposed mechanism for the discovery of the source codes of Abarca's "Pharmacy Agent" software and the infringing software program object of the present case.

### DISCUSSION

A.  **Defendants' request for an additional protective order is without merit, as they have not demonstrated why the Confidentiality and Protective Order currently in effect in insufficient.**

Through their Memorandum, PharmPix states that "[t]he Plaintiffs should be required to satisfy this Court that they have a cognizable cause of action against the Defendants before the Plaintiffs are entitled to engage in burdensome and intrusive discovery that seeks to obtain highly vulnerable, confidential and proprietary trade secret information." Docket No. 58, p. 3. Defendants further argue that a protective order should be entered by this Court in order to safeguard the confidentiality of their allegedly valuable trade secrets. Defendants' argument should be dismissed by this Court for several reasons.

First, Defendants forget that their same arguments regarding the existence of a "cognizable claim" have already been denied by the Court. That is, on March 17, 2011, PharmPix moved to dismiss the Verified Complaint stating, among other things, that Plaintiffs did not have a cognizable cause of action for copyright infringement. See, Docket No. 25. On March 29, 2011, Plaintiffs filed the corresponding opposition and two (2) days later, the Court denied Defendants' request for dismissal. See, Docket Nos. 27 and 28. It seems, however, that PharmPix insists on rehashing arguments previously discarded by the Court.

Similarly, this Court should not lose sight of the fact that a Confidentiality and Protective

---

[2] Simultaneously with this filing, Plaintiffs will submit the *Expert Report of Philip Greenspun, Ph. D.*, Exhibit A hereto, through a separate motion to which only the Court and the parties to this case will have access to the same.

3

Order --amply negotiated and agreed to by the parties-- has already been entered with the purpose of enabling the necessary discovery in the present case. See, Docket No. 52. Contrary to Defendants' false and frivolous contentions, Plaintiffs have never opposed or disagreed with the adoption of a protective order directed to secure the parties' confidential and proprietary information. To the contrary, it was the Plaintiffs who insisted in the adoption of a confidentiality and protective order since the inception of this case, precisely to avoid PharmPix's unfounded and false theories. Moreover, as part of these negotiations, Plaintiffs even accepted the "Highly Confidential Information" and "Highly Confidential Source Code" designations proposed by Defendants specifically for the eventual production of the parties' source codes. See, Confidentiality and Protective Order, Docket No. 52-1.

Notwithstanding the strict limitations to accessing such data included in the Confidentiality and Protective Order, Defendants now intend to prevent any discovery *whatsoever* of the source codes from taking place but do not even attempt to explain why the agreed measures are insufficient to protect the parties' "Highly Confidential Source Code" information. PharmPix further insists --on the basis of unsubstantiated and unfounded personal attacks-- that Plaintiffs' request for the production of the programs' source codes is somehow unlawfully motivated. In reality, other than PharmPix's sheer speculation, Defendants simply fail to provide this Court with any reason why delivery of confidential source codes --to be limited by the Confidentiality and Protective Order to an independent expert-- should in any way compromise their so-called trade secret.[3]

---

[3] Plaintiffs have noted that in most (if not all) of PharmPix's filings, defendants are trying to litigate this case mainly through unfounded attacks and false statements aimed at, among others, Plaintiffs' representatives and their attorneys (to the extent Defendants insist that there will be an improper use of the discovery mechanism in this case), instead of supporting their motions on any supporting law and case law. Such arguments include unfounded and frivolous attacks at Mr. Jon Borschow's contributions to MIT and how this somehow raises serious concerns as to Plaintiffs' expert who is a professor at MIT. See, Docket No. 58, p. 33. If this pattern continues, Plaintiffs may eventually seek sanctions in this case as many of these statements (if not all of them) are in violation of Rule 11 of

Simply stated, PharmPix's request for another protective order in this case is baseless. Defendants have failed -- yet again -- to produce a single shred of evidence to support their position that Plaintiffs' request for the discovery of the infringing software's source code is an effort to "discourage competition"[4] or engage in discovery misconduct. Docket No. 58, p. 3. To the contrary, Defendants are "playing fast and loose" with this Court by requesting a protective order directed at preventing that discovery of their highly incriminating source codes be conducted in the present case. Thus, Defendants' request for a protective order in addition to the one already in effect in this case must be denied.

B.  **Defendants' position that Plaintiffs should produce evidence as to the element of substantial similarity to justify the production of the source codes disregards the applicable case law for Plaintiffs' request for discovery.**

PharmPix once again argues that in order for the production of the source codes to proceed, Plaintiffs must first make an evidentiary showing as to the substantial similarities between "Pharmacy Agent" and Defendants' infringing program. Defendants' argument is circular as it disregards the applicable case law --cited by Plaintiffs at Docket No. 57-- that supports Plaintiffs request for the production of the source codes precisely to demonstrate the substantial similarity element of their copyright infringement claim.

As Plaintiffs have repeatedly stated throughout this case, the First Circuit has established that the elements of a copyright infringement case can be asserted through circumstantial evidence, as "[p]lagiarists rarely work in the open and direct proof of actual copying is seldom available." Johnson v. Gordon, 409 F.3d at 12, 18 (1st Cir. 2005). Plaintiffs have clearly satisfied

---

the Federal Rules of Civil Procedure.

[4] It is noteworthy that Defendants concede that "Defendants and Plaintiff Abarca are competitors in the highly competitive business of Pharmacy Benefit Management ("PBM") market." Docket No. 58, p. 2. Defendants' statement should defeat its own antitrust allegation that somehow Abarca is "monopolizing" a highly competitive market.

this standard by alleging that all of the individual defendants in this case, while working for PICA, enjoyed complete access to PICA's processor that contained the copyrighted software, "Pharmacy Agent", since they actually were the ones that created it for PICA. See, Docket No. 1 at ¶¶ 24-25. Defendants have not --because they cannot-- contradicted this claim. In addition, Mr. Scott Domínguez has confirmed, through his unsworn declaration under penalty of perjury, that co-defendant PharmPix was using an essentially **exact** copy of the software developed in-house at PICA, to operate its business of pharmacy benefits information and management. See, Docket No. 1, ¶¶49-50. This should be sufficient here to allow Plaintiffs' independent expert to obtain access to PharmPix's source code data.

In any event, by including the *Expert Report of Philip Greenspun* (Exhibit A), PharmPix's misguided request for additional evidence of "substantial similarities" between the two programs at issue has been satisfied. Dr. Philip Greenspun has confirmed that PharmPix's submittal to the U.S. Copyright Office includes substantially similar creative elements, some of which are in many instances identical --***including even identical typos in identical locations***--, to Abarca's older "Pharmacy Agent" program. As stated above, based upon the information available at this time, Dr. Greenspun opines that PharmPix **copied** Abarca's source code.

Making matters worse, from Dr. Greenspun's findings and conclusion, it is evident that PharmPix has attempted to pass as its own and fraudulently register Abarca's software before the Copyright Office.[5] In so doing, PharmPix's illegal conduct has caused portions of Abarca's sensitive and confidential source code to be deposited in the public domain without any redaction. While engaging in this type of conduct, PharmPix has the audacity to come before this Court to falsely argue that it is the rightful owner of such copyright and that it is the Plaintiffs

---

[5] It is noteworthy that the PharmPix registered software, which Plaintiffs' expert has concluded is substantially similar or even a copy of Abarca's software, is being marketed and licensed to third parties without Abarca's authorization and in violation of law.

who are using this litigation to obtain access to its intellectual property and/or engage in illegal activity. Unfortunately for PharmPix, such careless and frivolous conduct has allowed Plaintiffs to bring before this Court compelling evidence that PharmPix's arguments, as set forth in its pleadings, are false and misleading.

Moreover, there should be no doubt as to the relevance of the source codes, since courts have recognized that "[t]o determine whether an instance of copying is legally actionable, **a side-by-side comparison must be made between the original and the copy** to determine whether a layman would view the two works as 'substantially similar'." Seastrunk v. Darwell Integrated Tech., Inc., 2008 U.S. Dist. LEXIS 4413 at *10 (N.D. Tex. 2008) (copyright infringement claim concerning source code). Further, since "**[s]ource code is often not publicly available… it can be difficult or impossible for a plaintiff to examine [the] accused source code before some discovery has occurred**." Brocade Communications Systems, Inc. v. A10 Networks, Inc., 2011 U.S. Dist. LEXIS 30227 at *26 (N.D. Cal. 2011) (emphasis added). Defendants have not contradicted these cases and, aside from nonsensical arguments, they have failed to explain why the negotiated Confidentiality and Protective Order currently in effect is insufficient protection for discovery purposes. To the contrary, it seems evident that PharmPix simply does not want to produce the source code to continue hiding its illicit acts.

Finally, it is important to note that the key cases cited by Defendants to prevent disclosure of software source codes are inapposite here.  In Viacom v. YouTube, 235 F.R.D. 256 (S.D.N.Y. 2008), the court considered several motions to compel discovery in the context of a claim related to the copyrights in specified television programs, motion pictures, music recordings, and other entertainment programs that were being illegally posted on the web.  That is, Viacom is **not** a software copyright case and, as such, does not constitute adequate precedent to the present

action. Similarly, Gemysis v. Phoenix, 186 F.R.D. 551 (N.D. Cal.1999), does not support Defendants' position as it only stands for the proposition that in a case **in which extensive discovery had been conducted which disproved any illicit copying**, the courts should be reluctant to grant additional discovery as a last ditch effort to avoid summary judgment.

In short, Defendants' arguments --as to why the source codes should not be produced-- constitute no more than a renewed effort to preclude this Court from discovering the truth in the present case. Contrary to those arguments and pursuant to the above-mentioned case law, a side-by-side comparison and analysis of the source codes of Abarca's and PharmPix's claims processor software must be immediately made before Defendants rewrite or change the same in an effort to continue concealing their infringing conduct.

**C.   The comparison of the source codes should be done by the parties' respective experts.**

As proposed by Plaintiffs, the comparison of the source codes should be made by the parties' expert witnesses, which have the necessary expertise in the field and would be able to clearly explain to the Court the necessary elements of the substantial similarity between the software programs at issue. See, Integrated Bar Coding Sys. v. Wemert, 2007 U.S. Dist. LEXIS 9952 at *12 (E.D. Mich. 2007) ("Substantial similarity should be considered from the viewpoint of the intended audience, which in this case, are those with knowledge and expertise in computer programming. Therefore, the Court will rely on the experts' reports to determine if the OrbeSoft source code infringes the QuickTrac copyright.").

To this end, Plaintiffs' expert has done an initial comparison with excerpts of the source code that PharmPix deposited with the Copyright Office and, not surprisingly, it is evident that PharmPix's infringing software is substantially similar to Abarca's work. See, **Exhibit A**. Plaintiffs seek access to additional portions of the program at issue, so that their chosen expert

8

can conduct further analysis, aside from the information already obtained through the Copyright Office.

PharmPix has chosen to focus, instead, in their proposed deposition of plaintiffs' initial witness, Mr. Scott Domínguez. Defendants further suggest that during the deposition, Mr. Domínguez be given the opportunity to compare the programs at issue in order to express his opinion as to the similarities between them. As part of their argument, Defendants insinuate that Plaintiffs are somehow reluctant to the taking of Mr. Domínguez's deposition. [6]

Regardless of Defendants' preference as to how to conduct their own discovery, Mr. Scott Domínguez is not Plaintiffs' designated expert in this case. To the contrary, and again, Plaintiffs' designated expert has concluded that "substantial portions of the PhamPix SQL schema or data model, which is the heart of any database application, were copied from the Abarca SQL schema." See, **Exhibit A**, p. 12. Such conduct exerted by the Defendants, and their continued effort to conceal it, should not be tolerated by this Court. Thus, regardless of whatever should be made evident during Mr. Domínguez's deposition, Plaintiffs' claims remain viable and are entitled to a review and conduct a full comparison of the source codes by their own expert.[7]

## CONCLUSION

As explained in the multiple filings before this Honorable Court, it is Plaintiffs' position that co-defendant PharmPix has illegally copied and continues to use a virtually **exact copy of Abarca's "Pharmacy Agent" software (with minor modifications)**, to operate PharmPix's

---

[6] Defendants continue to erroneously insist that Plaintiffs' Verified Complaint and request for preliminary injunction is **solely** based on the declaration of Mr. Scott Domínguez. A cursory review of the Verified Complaint, including all the evidence attached thereto, is all that the Court needs to ascertain that Defendants' argument is unfounded. Moreover, any allegation by the Defendants to the effect that the Plaintiffs "are bending over backwards to prevent the taking of his deposition" is knowingly and willfully false. See, Docket No. 58, p. 32. Defendants are free to schedule the deposition of Mr. Scott Domínguez during the time period to conduct expedited discovery.

[7] For lack of better arguments, Defendants resort to spurious allegations against Plaintiffs and their retained expert. Defendants' contentions directed to a prestigious institution such as MIT are simply preposterous and should be disregarded by this Honorable Court. See, Docket No. 58 at pp. 34-35 (Docket No. 58).

PBM business in direct competition with Abarca. See Docket Nos. 1 and 4-1. Defendants have not denied (because they cannot) that they had full access to Abarca's copyrighted software. Moreover, instead of denying that PharmPix's claims processor software is not a copy from "Pharmacy Agent," Defendants merely resort to unsubstantiated personal attacks. However, from a review of PharmPix's submittal to the Copyright Office, Plaintiffs' expert has concluded that the Defendants copied Abarca's source code.

Therefore, as discussed before, it is essential that a side-by-side comparison of the entire works at issue be immediately performed by the parties' expert witnesses, as proposed in Plaintiffs' Memorandum. This way, and notwithstanding Defendants' unsubstantiated tirades, the truth will be discovered in the present case.

WHEREFORE, Plaintiffs respectfully request that this Court: (i) take notice of the foregoing; and (ii) order PharmPix to produce forthwith the entire source code of its claims processor software for its subsequent comparison by the Plaintiffs expert witness.

RESPECTFULLY SUBMITTED.

It is certified that on this same date, a true copy of the foregoing was filed through the Court's CM/ECF system, which will generate a notice to all CM/ECF participants in this case.

In San Juan, Puerto Rico, this 1st day of June, 2011.

        **O'NEILL & BORGES**
        Attorneys for Plaintiffs
        American International Plaza
        250 Muñoz Rivera Ave., Suite 800
        San Juan, PR  00918-1813
        Telephone:  (787) 764-8181
        Fax:        (787) 753-8944

        s/Carla García-Benítez
        Carla García Benítez
        USDC-PR No. 203708
        carla.garcia@oneillborges.com

<u>s/Mauricio O. Muñiz-Luciano</u>
Mauricio O. Muñiz-Luciano
USDC-PR No. 220914
mauricio.muniz@oneillborges.com

<u>s/Ana Margarita Rodríguez-Rivera</u>
Ana Margarita Rodríguez-Rivera
USDC-PR No. 227503
ana.rodriguez@oneillborges.com
