IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ABARCA HEALTH, LLC and PHARMACY INSURANCE CORPORATION OF AMERICA,<br><br>Plaintiffs,<br>v.<br><br>PHARMPIX CORPORATION; ET AL.<br><br>Defendants. | Civil No. 11-1218 (BJM)<br><br>Re: Injunctive Relief, Copyright Infringement and Damages;<br><br>PLAINTIFFS REQUEST JURY TRIAL |

**PLAINTIFFS' REQUEST FOR AUTHORIZATION FOR AN
EXPERT'S REVIEW OF PHARMPIX'S COMPUTER NETWORK**

**TO THE HONORABLE COURT**:

**COME NOW**, plaintiffs, Abarca Health LLC ("Abarca") and Pharmacy Insurance Corporation of America ("PICA") (collectively the "Plaintiffs"), through the undersigned counsel, and respectfully allege and pray as follows:

**PRELIMINARY STATEMENT**

Upon the suspicious departure of individual Defendants HERMINIO JOSÉ CORREA GARCÉS, JAIME FIGUEROA TORRES, and MARCOS A. GONZÁLEZ CARBALLO from PICA, and eventually learning of the role of these defendants in PharmPix, a direct competitor of PICA's former PBM business, Plaintiffs had reason to be apprehensive regarding the integrity of the protections instituted to protect PICA's intellectual property. Such qualms were eventually corroborated by a non-biased witness, Mr. Scott Domínguez, who voluntarily contacted Plaintiffs to confirm the worst: PharmPix had copies of, and was using in its business operation, the Pharmacy Agent Program that had been developed with the participation of some of the individual defendants while they were employed at PICA, as

members of a substantial IT team.  Such confirmation and other facts previously and thereafter uncovered by Plaintiffs led to the filing of this civil suit back in February 2011.

Concerned that upon receiving notice of such action Defendants would attempt to change their incriminating software, Plaintiffs hand-delivered a letter to all Defendants –upon service of process—reminding them of their duty to preserve all relevant evidence.  Such letter has apparently been to no effect. As this complex computer software litigation continues to progress, evidence continues to mount that inevitably leads to the conclusion that Defendants have indeed taken steps to destroy or alter key evidence to prevent a finding of copyright infringement.

Thus, Plaintiffs request the urgent intervention of this Court for authorization to have its expert witness, Dr. Philip Greenspun and/or his team, personally examine PharmPix's existing network and electronic records to salvage the source code that will establish that copyright infringement has occurred here.

## DISCUSSION

As the Court well-knows, promptly upon filing suit Plaintiffs proposed an expedited discovery process that would allow them to obtain evidence to corroborate and further support the copyright infringement claims. Such efforts have been initially thwarted by Defendants' stance that not even an expert witness bound by a Confidentiality Order should have access to their source code.

Thus, and using such grounds as an excuse to deny access to **any** potentially useful information, Defendants have avoided their obligation to adequately respond to all of Plaintiffs' discovery requests that require details regarding PharmPix's implementation of a claims processing software to operate its business. [1]  As evidenced by other recent filings,[2]

---

[1] See, *e.g.*, Plaintiffs' urgent motion to compel adequate responses to discovery, Docket No. 90, and related reply, Docket No. 99.

[2] *See,* Plaintiffs second motion to compel discovery responses, Docket No. 128.

Defendants still continue to rely on such objection to deny Plaintiffs even the most basic information regarding their computer software program.

In the meantime, and notwithstanding such hindrances, Plaintiffs were able to obtain and compare the source code submitted by co-defendant PharmPix to seek its own Copyright Registration Number TX7-314-220. Not surprisingly, a comparison of such source code to the Abarca Pharmacy Agent Program plainly reflected that substantial **copying** had taken place.[3] Until such comparison took place, Defendants had continuously (and erroneously)[4] espoused that they had better rights over their software program because they had an *earlier* copyright registration than the ones relied on by Abarca. Upon confronting this additional and irrefutable evidence of **actual** copying, Defendants then changed their story to claim that their much-advocated registered work was in fact irrelevant to the proceedings, as the copyrighted software that "constitutes the heart of their business" is **not** the registered work.[5]

Moreover, given Mr. Correa's preposterous representations at his deposition that the registered work is utterly unrelated to the current operation and was, in fact, a "never used" prototype,[6] Plaintiffs requested that PharmPix produce a complete copy of such source code. Yet again, Defendants refuse such production claiming it constitutes a trade secret.[7] If the program is, as Mr. Correa claimed under oath, a useless prototype, not vital to the operation, why does PharmPix protect it as a trade secret? Why would PharmPix take the extra step of

---

[3] *See,* Plaintiffs' filings at Docket Nos. 69-70. As the Court itself has concluded, this report "certainly shores up" the allegation that copying has taken place. *See,* Docket No. 98, at p. 11.

[4] For copyright law purposes, whether one copyright registration is earlier than the other is simply **irrelevant**. The gist of a copyright claim is whether the Plaintiff's copyrighted work was an *earlier creation* to which the defendant had access and from which substantial portions of the copyrightable elements were illicitly copied.

[5] *See,* Defendants' claims to that effect at Docket No. 113, p. 2, as well as the testimony of Defendant Herminio Correa during his deposition, Docket No. 107-1.

[6] *See, e.g.*, Docket No. 107-1, pp.172 (lines 10-14), 173 (lines 5-6).

[7] *See,* Answer to Plaintiffs' second request for production of documents, response 22, at pages 9-10, Docket No. 128-3. The Court should also note that, in this response, Defendants acknowledge that they **did not** issue any written instructions to PharmPix personnel regarding the obligation to preserve any and all documents and information relevant to this case. *Id.* at p. 12-13.

securing a copyright registration for this "prototype" in April 2010,[8] with the additional legal remedies such registration entails, and not protect the actual program it commenced using to serve their first customers on that same month?[9] Such prevarication is not to be believed.

In the meantime, in response to Plaintiffs' numerous requests for information, Defendants also produced --without any qualification—the **one and only** document that provides any details regarding PharmPix's claims processor software: PharmPix's business proposal to the State Insurance Fund Corporation ("SIF").  Plaintiffs have relied on the enclosure to this proposal to demonstrate that copyrightable elements of the Abarca Pharmacy Agent Program are present in PharmPix's version.[10] According to Defendants' most recent discovery response, [11] this proposal contains documents which set forth the "requirements, diagrams [and] system architecture documents" that describe PharmPix's claims processor so that the similarities pointed out by Plaintiffs certainly support a claim of copyright infringement.

Lo and behold, now that such similarities have been pointed out to the Court, Defendants now claim that "the OneArk EDI technical documentation has [so-called] typing errors because the Pharmpix processing engine does not posses (sic) any of the mentioned component, as described by plaintiffs in [the SIF Proposal exhibit]."[12] Similar claims are also made in Defendants most recent filing with the Court.[13] In other words, Defendants now claim that their June 2010 proposal to provide SIF a perpetual license of this same software

---

[8] *See,* Copyright registration at Docket No. 25-1.

[9] PharmPix's claims processor "went live" in April 2010.  *See,* response to question number 6 of Plaintiffs' first discovery request, Question at Docket Nos. 90-1, p6 and Answer at Docket No. 90-2 page 3.

[10] *See,* Docket No. 112, at p. 9 and p. 16.

[11] *See,* Defendants' supplementary response to Plaintiffs' first discovery request, Docket No.128-2, at p. 8.

[12]  *See,* Docket No. 124, p.2.

[13] *See,* Docket No. 134.

for almost million of dollars contains a "typo",[14] so that **all** of the components being offered in that proposal **do not exist**. Specifically, Defendants now claim that "Defendants' software does not contain **any of the components** mentioned therein (PharmPix's EDI.PharmacyAgent DLL, EDI.BusinessObject.Library DLL and Transactions DLL.)"[15]

That Defendants would first identify this quite substantial "mistake" in their representations to SIF more than a year after such submission, when, if true, such mistake would be tantamount to fraud in the SIF bidding process, is simply incredible. Rather, the quite-convenient "inexistence" of such components, and the need to make note such inexistence in their submission to the Court, must lead to the conclusion that PharmPix has *__simply expunged__* from the source codes deposited with the Clerk all of the key components of the PharmPix program that would have supported the copyright infringement claim. Such spoliation of evidence without consequence cannot be allowed.

This Court has broad discretion in crafting a proper sanction designed to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine. West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).[16] Sanctions for spoliation of evidence may be awarded pursuant to:

(1)   Fed.R.Civ.P. 37(b), for failure to comply with a discovery order;
(2)   Fed.R.Civ.P. 37(d), for failure to respond to discovery requests; and
(3)   The court's inherent authority to maintain its institutional integrity.[17]

---

[14] On May 31, 2011, Abarca judicially challenged the allocation of such bid to PharmPix. The Court may take judicial notice of the existence of pending proceeding Number KLRA 2011 00498 pending before the Puerto Rico Court of Appeals.

[15] *See,* Defendants' supplementary responses, at p. 2, Docket No. 128-2.

[16] Even where evidence is mishandled through carelessness, and the other side is prejudiced, a Court may impose sanctions, including exclusion of evidence. *See,* Kelley v. United Airlines, Inc., 176 F.R.D. 422, 427 (D.C. Mass. 1997) (*citing* Sacramona v. Bridgestone/Firestone. Inc., 106 F.3d 444, 447 (1st Cir. 1997) (citations omitted). Sufficient notice of a potential claim and of the potential relevance of the documents provides the necessary foundation for allowing a negative inference, even in the absence of bad faith. *Id.* "The rule in the First Circuit is that when a document relevant to an issue in a case is destroyed, the trier of fact sometimes may infer that the party who obliterated it did so out of a realization that the contents were unfavorable." *Id.* (citing Nation-wide Check Corp. v. Forest Hills Distrib., Inc., 692 F.2d 214, 217 (1st Cir.1982)).

[17] *See, also,* Wright & Miller, 22 FED. PRAC. & PROC. EVID. § 5178 (2006); Wayne D. Brazil, 7-37 MOORE'S FEDERAL PRACTICE - CIVIL § *37.120* (2006).

*See*, General Envtl. Science Corp., v. Horsfall, 141 F.R.D. 443, 450-455 (N.D. Ohio 1992)(citing both Fed.R.Civ.P. 37(b) and its inherent authority for sanctioning spoliation after court ordered production of documents); Stevenson v. Union Pac. R.R., 354 F.3d 739, 750 (8th Cir. 2004)(district court has authority either under its inherent power or pursuant to Rule 37 to sanction ongoing destruction of records pursuant to routine document retention policy by imposition of adverse inference instruction); Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 126-133 (S.D. Fla. 1987)(citing both Fed.R.Civ.P. 37(d) and its inherent authority for sanctioning spoliation after request for production had been made); Chambers v. NASCO, Inc., 501 U.S. 32, 43-49 (1991)(courts are vested with power to manage their own affairs so as to achieve orderly and expeditious disposition of cases); Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001)(citing Chambers, court noted that right to impose sanctions for spoliation arises from court's inherent power to control judicial process and litigation).

Given the above, and Defendants' other inconsistencies and other deceitful conduct throughout this case,[18] Plaintiffs urgently request that the Court issue an order requiring Defendants to provide access to Plaintiffs' expert witness, Dr. Philip Greenspun and/or his team to personally examine PharmPix's existing network and electronic records and investigate the spoliation of PharmPix's source code and/or verify that the source code deposited with the Court is indeed in compliance with this Court's order of September 23,

---

[18] As a mere example, as far back as June 10, 2011, Defendants insisted the most important discovery that had to be accomplished in **this case** was the deposition of Plaintiffs' witness, Mr. Scott Dominguez, Docket No. 84, at p. 12-13. Defendants requested that Plaintiffs coordinate same, but when undersigned counsel sought specific dates before contacting Mr. Dominguez, such request was apparently *abandoned*, as no follow-up ensued our request for proposed dates. It turns out, though, the Defendants were able to depose Mr. Dominguez in a separate and unrelated case, **and in the absence of Abarca/PICA's counsel,** asked numerous questions that are pertinent to this proceeding. Plaintiffs' counsel only became aware of this because Mr. Dominguez himself contacted Abarca/PICA.

6

2011.[19]  Moreover, and once such spoliation or non-compliance is confirmed, the Court should order that Defendants pay all costs associated with such investigation.

WHEREFORE, Plaintiffs respectfully and urgently request that this Court issue an order:  (i) requiring Defendants to immediately grant full access –including network administrator privileges and login credentials to their cloud-based servers- to Dr. Philip Greenspun and/or his team to personally examine PharmPix's existing network and electronic records, to investigate the spoliation of PharmPix's source code and/or verify that the source code deposited with the Court is indeed in compliance with this Court's order of September 23, 2011; (ii) imposing upon Defendants the obligation to pay all costs associated with such investigation upon confirmation that spoliation or non-compliance has indeed occurred; and (iii) granting any other relief that this Court deem just and proper.

RESPECTFULLY SUBMITTED.

It is certified that on this same date, a true copy of the foregoing was filed through the Court's CM/ECF system, which will generate a notice to all CM/ECF participants in this case.

In San Juan, Puerto Rico, this October 18, 2011

**O'NEILL & BORGES**
*Attorneys for Plaintiffs*
American International Plaza
250 Muñoz Rivera Ave., Suite 800
San Juan, PR  00918-1813
Telephone: (787) 764-8181
Fax: (787) 753-8944

s/Carla García-Benítez
Carla García Benítez
USDC-PR No. 203708
carla.garcia@oneillborges.com

Ana Margarita Rodríguez-Rivera
USDC-PR No. 227503
ana.rodriguez@oneillborges.com

s/Mauricio O. Muñiz-Luciano
Mauricio O. Muñiz-Luciano
USDC-PR No. 220914
mauricio.muniz@oneillborges.com

Vanessa Carballido-Clerch
USDC-PR No. 226506
Vanessa.carballido@oneillborges.com

---

[19] *See,* Docket No. 119.