## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**ABARCA HEALTH, LLC**, *et al.*,

    Plaintiffs,

    v.

**PHARMPIX CORPORATION**, *et al.*,

    Defendants.

Civil No. 11-1218 (BJM)

## OPINION AND ORDER

    In a verified complaint, Abarca Health, LLC ("Abarca") and Pharmacy Insurance Corporation of America ("PICA") (collectively, "plaintiffs" or "counterclaim defendants") sued PharmPix Corporation ("PharmPix") and others (collectively, "defendants") alleging copyright infringement under the Copyright Act, 17 U.S.C. §§ 501 *et seq.*, unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and Article 27 of the Puerto Rico Trademark Act, 10 L.P.R.A. § 223x, tort liability for misuse of trade secrets under Article 1802 of the Civil Code, 31 L.P.R.A. § 5141, breach of contract under Article 1059 of the Civil Code, 31 L.P.R.A. § 3023, and breach of fiduciary duty. (Docket No. 1, hereinafter "Compl."). PharmPix asserted counterclaims against the plaintiffs for unlawful restraint of trade and monopolization in violation of the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, and the Puerto Rico Antitrust Act, 10 L.P.R.A. §§ 257 *et seq.*, as well as for "unfair competition under the common law and the laws of Puerto Rico." (Docket No. 41, p. 23-38, hereinafter "Countercl."). These claims arise out of a tangled dispute regarding the parties' conduct in the pharmacy benefits industry, touching on their alleged use of computer software, misappropriation of business plans, and communications with prospective customers.

    Before the court is plaintiffs' motion to dismiss the counterclaim in its entirety under Fed. R. Civ. P. 12(b)(6). (Docket No. 56). The defendants opposed (Docket No. 67) and plaintiffs

replied (Docket No. 82). Also before the court is defendants' motion to dismiss the plaintiffs'

unfair competition claims under Rule 12(c). (Docket No. 100). Plaintiffs opposed this motion.

(Docket No. 115). For the reasons that follow, plaintiffs' motion to dismiss the counterclaim is

**granted in part**, and defendants' motion to dismiss the unfair competition claims is **denied.**

## MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

To survive a motion to dismiss at the pleading stage, "an adequate complaint must

provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-

Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). A court parses the allegations of

the complaint in two steps. First, "'legal conclusions couched as fact' or 'threadbare recitals of

the elements of a cause of action'" are identified and completely disregarded. Id. (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949–50 (2009)) (alteration marks omitted).

The remaining "[n]on-conclusory factual allegations" are then "treated as true, even if seemingly

incredible." Id. The overall standard is only satisfied if those facts "state a plausible, not a

merely conceivable, case for relief"; however, a court must not "attempt to forecast a plaintiff's

likelihood of success on the merits." Id. The standard applies to both Rule 12(b)(6) and Rule

12(c) motions to dismiss. See Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).

## PLAINTIFFS' MOTION TO DISMISS PHARMPIX'S COUNTERCLAIMS

PharmPix's counterclaim alleges that Abarca and PICA conspired to restrain trade and

engaged in monopolization and unfair competition in violation of the Sherman Act and the

Puerto Rico Antitrust Act. Abarca and PICA seek dismissal of all claims under Rule 12(b)(6).

## I.     Factual Allegations

PharmPix is a Puerto Rico corporation with a main office in Guaynabo. (Countercl., ¶ 3).

PharmPix was incorporated in April 2009 to provide "Pharmacy Benefit Management" (PBM)

services in Puerto Rico, and began developing "web based PBM software" with which to do so.

(Id., ¶ 7).  In March 2010, following the completion of its software, PharmPix applied for federal copyright registration, and received a registration certificate in 2011.  (Id., ¶¶ 8-9).  Abarca and PICA are Puerto Rico companies with offices in San Juan.  (Id., ¶¶ 4-5).

A month after PharmPix submitted its application, the Commonwealth Insurance Fund Corporation ("CFSE") published a request for proposals for PBM services, including the possibility of purchasing a PBM software license.  (Id., ¶ 10).  PharmPix submitted a bid proposal prior to the deadline; that proposal contained no software or source code.  (Id., ¶ 11).  Abarca also submitted a proposal; the proposals were open to the public, and Abarca officers "spent well around two hours reviewing PharmPix's proposal, while feverishly taking notes as they examined it."  (Id., ¶ 12).  PharmPix officers reviewed Abarca's proposal, and found it failed to meet CFSE's requirements:  it did not offer "graphics or schemes" of Abarca's PBM solution, and indicated that the software licensing price was "to be discussed," leaving it free to see what other bids' price points were.  (Id., ¶ 13).

PharmPix approached two other prospective customers in December 2010: First Medical Health Plan, Inc. ("First Medical") and Plan de Salud Menonita ("Menonita").  (Id., ¶ 14).  PharmPix's corporate strategy was to contact these businesses by the end of 2010.  (Id., ¶ 14).  Only PharmPix officers and Scott Domínguez ("Domínguez"), a witness for Abarca in the present suit, knew of this strategy.  (Id., ¶ 14).  Negotiations with First Medical suddenly broke down after PharmPix terminated Domínguez and Abarca "unexpectedly" presented a proposal to First Medical.  (Id., ¶ 15).  Abarca also proposed a PBM solution to Menonita, and called Menonita to inquire about its relationship with PharmPix.  (Id., ¶ 16).

Abarca informed Menonita that it intended to sue PharmPix for copyright infringement, doing so in order to prevent Menonita and PharmPix from conducting business with each other. (Id., ¶ 17).  Abarca informed various "peers and clients" in the industry of its suit, with the intent

of preventing PharmPix from doing business in Puerto Rico.  (Id., ¶18).

PharmPix was selected as a finalist for the CFSE proposal; PharmPix officers have met with CFSE officials, and PharmPix's proposal was superior to Abarca's.  (Id., ¶ 19).  Abarca sued PharmPix in an attempt to prevent PharmPix from winning the contract.  (Id., ¶ 19).

Its suit and communications are also intended to prevent PharmPix from bidding on a contract with the "Administración de Seguros de Salud de Puerto Rico" ("ASES").  (Id., ¶ 20). Abarca intends to "continue sneaking into PharmPix's copyrighted software and its trade secrets in order to copy and further use them to improve their own software."  (Id., ¶ 21).

With the intent to stifle competition, Abarca and PICA (1) falsely alleged that PharmPix infringed their copyrights, engaged in unfair competition, (2) conspired to prevent PharmPix from securing business in Puerto Rico, and (3) "intend to enforce through Abarca, counterclaim plaintiff[']s duties (if any) towards . . . PICA." (Id., ¶ 25).  Abarca and PICA "have also been interfering with contractual relations of other PBM service providers in Puerto Rico," with the intent of monopolizing PBM services in Puerto Rico.  (Id., ¶ 26).

## II.   Discussion

PharmPix alleges that Abarca and PICA engaged in an unlawful conspiracy in restraint of trade and monopolization, violating the Sherman Act, 15 U.S.C. §§ 1 *et seq.*, and the Puerto Rico Antitrust Act, 10 L.P.R.A. §§ 258 *et seq.*, as well as "unfair competition under the common law and the laws of Puerto Rico."   The counterclaim defendants seek dismissal of each of these claims.[1]

---

[1] With respect to the conspiracy and monopolization theories, I accept the parties' position that the Commonwealth and Sherman Act claims are coextensive.  (See Docket No. 56, p. 15) ("The Puerto Rico Antitrust Act mirrors the federal antitrust statutes.") (citing Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 16 (1st Cir. 2003)); (Docket No. 67, p. 11) ("The same analysis applies to plaintiffs' arguments regarding the sufficiency of the pleadings to state a claim under the Sherman Act [and] the Puerto Rico Antitrust Act . . . .").

A.      **Antitrust Standing**

The counterclaim defendants argue that PharmPix lacks "antitrust standing" to pursue its

Sherman Act claims.  (Docket No. 56, p. 10-11). Antitrust standing is a prudential doctrine

limiting the universe of plaintiffs who may bring antitrust claims, based on the balancing of six

factors:

> (1) the causal connection between the alleged antitrust violation and harm to the
> plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury
> and whether the injury was of a type that Congress sought to redress with the
> antitrust laws ("antitrust injury"); (4) the directness with which the alleged market
> restraint caused the asserted injury; (5) the speculative nature of the damages; and
> (6) the risk of duplicative recovery or complex apportionment of damages.

RSA Media, Inc. v. AK Media Group, Inc., 260 F.3d 10, 13-14 (1st Cir. 2001) (quoting Serpa

Corp. v. McWane, Inc., 199 F.3d 6, 9-10 (1st Cir. 1999)).  "Plaintiffs must show not only that

they were injured as a result of the defendant's actions and that those actions constituted an

antitrust violation, but also that their injury is the type of injury the antitrust violation would

cause *to competition*."  Sterling Merchandising, Inc. v. Nestlé, S.A., 656 F.3d 112, 121 (1st Cir.

2011) (emphasis in original).  But "[c]ompetitors . . . in the market where trade is allegedly

restrained are presumptively the proper plaintiffs to allege antitrust injury."  Serpa, 199 F.3d at

10-11 (citing SAS of P.R., Inc. v. P.R. Tel. Co., 48 F.3d 39, 44-45 (1st Cir. 1995)).

The counterclaim defendants focus on the antitrust injury factor, and assert that any

injury is to PharmPix alone, and not to the market for PBM services.  (Docket No. 56, p. 11).

Focusing on a specious allegation related to the monopoly claim, which I will address shortly,

they reason that "[t]he lack of specificity of PharmPix's allegations only constitutes an attempt to

conceal the fact that the competitive market structure has not suffered any antitrust injury . . . ."

(Id.).  But at this stage, I am persuaded by PharmPix's characterization of the antitrust injury:  by

allegedly heading off its efforts at every turn, Abarca and PICA have attempted to completely

eliminate a supplier of PBM solutions from the industry.  Of course, PharmPix will bear the ultimate burden of proving injury to the marketplace as well as itself, and its evidence can be tested at summary judgment.  See Sterling Merchandising, 656 F.3d at 117-18.  For now, the counterclaim defendants are not entitled to dismissal on antitrust standing grounds.

### B.    *Noerr-Pennington* **Immunity**

The counterclaim defendants also argue that they are immune from antitrust liability for suing PharmPix.  The First Amendment, which protects the right to petition the government, including courts, bars the imposition of antitrust liability for filing a lawsuit unless the action is objectively baseless and is "intended only to burden a rival with the governmental decision-making process itself."  Davric Me. Corp. v. Rancort, 216 F.3d 143, 147-48 (1st Cir. 2000) (citing United Mine Workers v. Pennington, 381 U.S. 657 (1965); Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961)).

PharmPix does not address this argument.  Nonetheless, it is unavailing at this stage since I take PharmPix's allegations, including the allegation that the copyright infringement suit is baseless, as true.  (See Countercl., ¶ 25) (counterclaim defendants "have made false allegations and claims of copyright and unfair competition violations . . . .").  Contrary to the counterclaim defendants' position, at this stage it is irrelevant whether "courts often look to settlements and rulings on dispositive motions," such as this court's denial of the motions to dismiss the original complaint, "as *evidence* of the merits of the case."  (Docket No. 56, p. 14) (emphasis added) (quoting STMicroelectronics, Inc. v. Avago Techs. U.S., Inc., No. 5:10-cv-05023-JF (PSG), 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011)).  Even assuming for argument's sake that the court's pleadings-stage rulings are probative of the suit's objective merit, the applicability of *Noerr-Pennington* is a "highly factual determination[] inappropriate for a dismissal motion." See Guimerfe, Inc. v. Pérez-Perdomo, No. 08-1243 (CCC), 2009 WL 918933, at **3-4 (D.P.R.

March 31, 2009).  Thus, without expressing any opinion as to whether this defense could apply at summary judgment, it does not establish grounds for dismissal under Rule 12.

###    C.    Combination or Conspiracy in Restraint of Trade

The counterclaim defendants argue that (1) PharmPix's allegations of an agreement or conspiracy are inadequate to state a section 1 claim, and (2) Abarca and PICA share a common decision-making center, precluding liability.  (Docket No. 56, p. 5-8, 10-11).  Under section 1 of the Sherman Act, "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States, . . . is declared to be illegal."  15 U.S.C. § 1.  The elements of a civil claim under section 1 are (1) concerted action, and (2) a restraint of trade that is either "per se illegal" or that "fail[s] scrutiny under the rule of reason."  Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 16 (1st Cir. 2004).

PharmPix does not analyze the adequacy of its conspiracy allegations, resting on the argument that "[i]t is the defendant who has the burden of explaining away an inference of conspiracy."  (Docket No. 67, p. 11) (citing Milgram v. Loew's, Inc., 192 F.2d 579 (3d Cir. 1951)).  This is a problematic position, since the counterclaim defendants are effectively challenging whether such an inference arises at all.  Nonetheless, I find that PharmPix's allegations of concerted action survive a motion to dismiss.  While the counterclaim defendants accurately observe that the majority of the counterclaim's allegations relate to the conduct of Abarca and its officers, the central conspiracy allegation is that Abarca and PICA agreed to (1) sue PharmPix on false grounds and (2) to spread word of that suit.  (Countercl., ¶ 25).  This is not a freestanding, unadorned allegation of an agreement; Abarca and PICA's very status as co-plaintiffs permits an inference that they were in agreement about filing the suit.  This raises the plausibility of the relevant conspiracy—an agreement to publicize the lawsuit's false claims—above the minimum threshold.  In decrying the absence of allegations regarding "any

conversation, communication[,] or action between Abarca and PICA," the counterclaim defendants seek a level of specificity not demanded at the pleading stage. "Allegations of discrete factual events," such as the contacts with PharmPix customers and joint filing of the main lawsuit, "are not 'conclusory' in the relevant sense." Ocasio-Hernández, 640 F.3d at 14.

In the alternative, the counterclaim defendants argue that Abarca and PICA share "centers of decisionmaking," placing them outside the scope of section 1 liability because a single enterprise, regardless of its corporate structure, cannot conspire with itself. (Docket No. 56, p. 6-8) (citing Am. Needle, Inc. v. NFL, 130 S.Ct. 2201 (2010) and Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984)). Although PharmPix addresses the wrong standard by challenging the sufficiency of Abarca and PICA's evidence, it is correct in substance: the counterclaim's allegations do not establish that Abarca and PICA share common ownership or control that would make them a single enterprise. The counterclaim defendants argue that "it is undisputed that Abarca was spun-off from PICA and that both corporations share a common decision making center." (Docket No. 56, p. 8). But the allegations of the original complaint—even if supported by a verifying affidavit—are not entitled to the presumption of truth when evaluating a Rule 12(b)(6) motion to dismiss the counterclaim. Thus, while this defense may be subject to resolution at summary judgment, dismissal at the pleading stage is improper.

In sum, the counterclaim defendants have not shown they are entitled to dismissal of PharmPix's section 1 claims under the Sherman Act.

### D.     Monopolization or Attempted Monopolization

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person . . . to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. Monopolization occurs when a

**Abarca Health, LLC v. PharmPix Corporation**                                    Page 9
Civil No. 11-1218 (BJM) – Opinion and Order

person (1) has monopoly power, and (2) "has engaged in impermissible 'exclusionary' practices with the design or effect of protecting or enhancing its monopoly position." Coastal Fuels of P.R., Inc. v. Caribbean Petrol. Corp., 79 F.3d 182, 195 (1st Cir. 1996) (quoting Herbert Hovenkamp, Federal Antitrust Policy § 6.4a (1994)).  Attempted monopolization claims require a plaintiff to show "(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Spectrum Sports v. McQuillan, 506 U.S. 447, 456 (1993); Sterling Merchandising, 656 F.3d at 126.  Monopoly power, or the potential for monopoly power, is evaluated in light of the "relevant market" and "the defendant's ability to lessen or destroy competition in that market." Coastal Fuels, 79 F.3d at 196 (quoting Spectrum Sports, 506 U.S. at 456).

Abarca and PICA challenge the monopolization claim on several fronts; their most fruitful, however, is their argument that PharmPix has failed to allege facts showing either actual monopoly power or a "dangerous probability of achieving monopoly power" in the market. (Docket No. 56, p. 11-12).  Specifically, they argue that there are no allegations from which to infer anything about the nature of the PBM market in Puerto Rico, such as the number of PBM service providers, their relative market share, or any characteristics of the PBM service market that might facilitate monopolization.  PharmPix does not respond to this argument, and I am persuaded that the counterclaim does not plausibly allege this claim.

The counterclaim's only reference to other PBM competitors is the allegation that Abarca and PICA "have also been interfering with contractual relations of other PBM service providers . . . in order to monopolize the PBM service industry in Puerto Rico." (Countercl., ¶ 26).  As the counterclaim defendants point out, this allegation is virtually devoid of factual content, such as the identities of other PBM providers, or the specific relationships Abarca and/or PICA have interfered with.  Absent such context, there is no basis for finding that Abarca and/or

PICA have a monopoly, or are at risk of securing one.  Moreover, the counterclaim's other allegations add nothing that might make this theory plausible on the whole.  In broad strokes, PharmPix alleges that Abarca has pursued baseless claims of copyright infringement and unfair competition, surreptitiously learned of its business plans, and targeted its potential contacts with disinformation.  Yet beyond the general allegation in paragraph 26, nothing in this arc suggests that Abarca or PICA have directed, or intend to direct, such machinations at the rest of the PBM services market.  "Specific information, even if not in the form of admissible evidence, would likely be enough at this stage; pure speculation is not."  <u>Peñalbert-Rosa v. Fortuño-Burset</u>, 631 F.3d 592, 596 (1st Cir. 2011).

Because PharmPix has not alleged facts showing either actual monopoly power or a dangerous probability of achieving such power, the counterclaim defendants are entitled to dismissal of this claim.

> **E.      Puerto Rico Unfair Competition**

Finally, the counterclaim defendants argue that Puerto Rico's statute prohibiting unfair competition does not recognize a private cause of action.  (Docket No. 56, p. 15-18).  Puerto Rico's Antitrust Act contains a statutory prohibition on "[u]nfair methods of competition, and unfair or deceptive acts or practices in trade or commerce."  10 L.P.R.A. § 259(a).  However, the private causes of action for damages and injunctive relief under the Act expressly exclude § 259 from their ambit.  10 L.P.R.A. §§ 268, 269a; <u>Diaz-Ramos v. Hyundai Motor Co.</u>, 501 F.3d 12, 15 (1st Cir. 2007).  PharmPix's only treatment of its unfair competition theory is limited to variations on the assertion that it "adequately and sufficiently pleads the elements necessary to pursue a remedy for unfair competition."  (<u>See, e.g.</u>, Docket No. 67, p. 14).  I am persuaded by the counterclaim defendants' argument that the Puerto Rico Antitrust Act does not permit private suits under its unfair competition provision; in the absence of further analysis by PharmPix, this

justifies dismissal of the counterclaim's third cause of action.

In sum, the counterclaim defendants have shown they are entitled to dismissal of PharmPix's monopolization claims under federal and Commonwealth law, and the unfair competition claims under the Puerto Rico Antitrust Act.  They are not entitled to dismissal of PharmPix's claims of conspiracy in restraint of trade.

**DEFENDANTS' MOTION TO DISMISS UNFAIR COMPETITION CLAIMS**

In pertinent part, plaintiffs allege that the defendants have engaged in unfair competition prohibited by the Lanham Act and the Puerto Rico Trademark Act.  The defendants seek dismissal of this subset of plaintiffs' claims.

## I.     Factual Summary

For brevity, I set forth only that portion of the complaint that is relevant to the unfair competition claims.

PICA created a PBM offering that includes a piece of software called "Pharmacy Agent," which it developed "in-house" by hiring computer programmers and engineers for the task. (Compl., ¶¶ 24-25).  All of PICA's intellectual property related to its PBM business, including the rights to any remedies, was transferred to Abarca by an asset purchase agreement.  (Id., ¶ 44).

PharmPix uses an identical or slightly modified version of Pharmacy Agent in its competing PBM business.  (Id., ¶¶ 48-51).    The defendants are not authorized to use the Pharmacy Agent software.  (Id., ¶ 61).  In their promotions, defendants falsely claim "that PharmPix created and owns" the software derived from Abarca's Pharmacy Agent.  (Id., ¶ 62). A newspaper article published on PharmPix's web site states that "[a]mong the innovative products offered by PharmPix is the *company's proprietary software application*."  (Id., ¶ 50) (emphasis added by plaintiffs).

## II.    Discussion

Defendants seek dismissal of plaintiffs' Lanham Act claim for unfair competition, characterizing it as a "false authorship" or "reverse palming off" claim that is not cognizable under the Act.  Plaintiffs argue that they are instead pleading a subtly different false advertising claim.  I begin with plaintiffs' observation that the court already ruled on a Rule 12 motion attacking their Lanham Act claims, address a technical ground for dismissal urged by defendants, and finally, consider the substantive challenge to the Lanham Act claim.

### A.       The Court's Prior Ruling

As plaintiffs observe, defendants previously sought dismissal of the plaintiffs' unfair competition claims.[2]  (See Docket No. 25).  The court denied this motion, and found that "[t]he complaint meets Rule 8's pleading standard."  (Docket No. 28).

The new motion raises a different legal argument than that presented before, but never articulates which grounds, if any, support revisiting the court's prior ruling.  "Reconsideration may be proper where the movant shows a manifest error of law or newly discovered evidence, or where the district court has misunderstood a party or made an error of apprehension. . . . Motions for reconsideration are not to be used as a vehicle for a party to advance arguments that could and should have been presented to the district court prior to its original ruling." See Villanueva v. United States, 662 F.3d 124, 128 (1st Cir. 2011) (dismissal under Rule 12(b)(1)) (citations omitted); Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 747 F. Supp. 2d 275, 277 (D.P.R. 2010) (denial of preliminary injunction).

Here, the defendants have not shown that they are entitled to further analysis of the

---

[2] Defendants assert that Puerto Rico courts find federal law highly persuasive in construing its intellectual property law.  (Docket No. 100, p. 8-9).  Plaintiffs do not contest this; therefore, I assume this is true for the purposes of this analysis, but do not otherwise decide the question.

I also note that while, as previously discussed, there is no private cause of action for "unfair competition" under the Puerto Rico Antitrust Act, plaintiffs' complaint invokes a section of the Trademark Act, 10 L.P.R.A. § 223x, which is analogous to the Lanham Act and is not subject to the same restrictions on private suit.

sufficiency of the plaintiffs' pleadings.  Nonetheless, even considering defendants' articulated position, they are not entitled to dismissal of the Lanham Act unfair competition claims.

### B.      Applicable Section of the Lanham Act

Defendants attack the complaint's errant invocation of § 1125(a)(2) as the source of its unfair competition claim.  That section merely expands the definition of "any person" in § 1125(a)(1) to include state actors.  As the defendants note, "[i]t is patently clear from the parties' allegations, particularly plaintiffs' allegations in their Complaint, that all the parties involved are natural persons and corporations from the private sector." (Docket No. 100, p. 3-4). Notice pleading demands only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2).  Errantly identifying "§ 1125(a)(2)" rather than "§ 1125(a)" cannot justify dismissal, particularly where, as defendants admit here, there is zero risk of misunderstanding the nature of plaintiffs' claims.

### C.      False Advertising and Reverse Passing Off

Turning to the substantive challenge, defendants argue that plaintiffs' unfair competition claims are based on their alleged failure to attribute authorship.  (Docket No. 100, p. 5-9).  False authorship claims (also called "reverse passing off") are not actionable under § 1125(a).  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37-38 (2003); Zyla v. Wadsworth, 360 F.3d 243, 251-52 (1st Cir. 2004).

In Dastar, a home video producer (Dastar) edited and repackaged a 1949 television series based on "Crusade in Europe," an account of World War II written by General Dwight D. Eisenhower.  Id. at 25-27. The television series itself had lapsed into the public domain, while the book copyright had been diligently renewed.  Id. at 26-27.  Dastar's release, titled "World War II Campaigns in Europe," made changes that included removing all references to Eisenhower's book and the original series.  Id.  The holders of the book copyright and newly-

sold exclusive television and video rights in the book sued Dastar, claiming in relevant part that

the failure to credit the original series or book constituted reverse passing off in violation of 15

U.S.C. § 1125(a)(1)(A).  Id. at 27-28.  The Supreme Court held that, in light of the common law

roots of the Lanham Act and because of inconsistencies with copyright and patent policy, the

phrase "origin of goods" in § 1125(a)(1)(A) can only refer to the producer of "the tangible goods

that are offered for sale, and not to the author of any idea, concept, or communication embodied

in those goods."  Dastar, 539 U.S. at 37.  But importantly, the court limited its holding to

"reverse passing off" claims, and suggested that claims for misrepresentation of "the nature,

characteristics [or] qualities" of a good or service under § 1125(a)(1)(B) were not necessarily

barred.  See id. at 38; Zyla, 360 F.3d at 252 n. 8.

Nonethleess,  Dastar did not invite plaintiffs to recast their false authorship claims in the

style of false advertising.  Courts presented with similar claims post-Dastar uniformly look past

the plaintiff's nomenclature and test whether the "characteristic" or "quality" that is allegedly

misrepresented is simply the product's creative authorship.  Particularly relevant here is the

opinion in Baden Sports, Inc. v. Molten, No. C06-210MJP, 2007 WL 2058673 (W.D. Wash. July

16, 2007), which considered a similar challenge to advertising "innovative," "exclusive" and

"proprietary" technology that the plaintiff allegedly developed.  After surveying a variety of

post-Dastar cases and considering the definitions of "exclusive," "proprietary," and

"innovative," the court concluded:

> Advertising that Molten's product is "exclusive" and "proprietary" to Molten does
> not relate to the "nature" or "qualities" of Molten's product, but to the fact that
> Molten invented and owns the basketball technology. As the *Monsanto* court
> explained, these kinds of false advertising statements "boil down to [Molten's]
> alleged passing off [Baden's] ... [technology] as its own. Such a claim, however
> styled, is barred by the language and holding of *Dastar*." . . . In contrast, any
> advertising indicating that Molten's "Dual Cushion Technology" is "innovative"
> or new relates, not to the inventor of Molten's basketball technology, but to the
> "nature, characteristics, [or] qualities" of the basketballs themselves. *Dastar* does

not bar a false advertising claim based on Molten's advertising that its product or technology is innovative.

Id. at *6 (citing Monsanto Co. v. Syngenta Seeds, Inc., 443 F. Supp. 2d. 648, 653 (D. Del. 2006)).   On post-trial appeal, the Ninth Circuit granted judgment as a matter of law for the defendants on the "innovation" claim; however, the court noted that the plaintiff's argument at trial and on appeal was not based on the novelty sense of "innovation," but rather, rested only on the theory that Molten falsely claimed to have created the technology.   See Baden Sports, Inc. v. Molten USA, Inc., 556 F.3d 1300, 1306-08 (9th Cir. 2009).

Here, plaintiffs base their unfair competition claim on their allegation that "in newspaper articles which continue to be publicized by PharmPix in its website, PharmPix misleadingly claims that '[a]mong the innovative products offered by PharmPix is the *company's proprietary software application*.'"  (Docket No. 1, ¶ 50) (emphasis added by plaintiffs).   To avoid the reach of *Dastar*, plaintiffs argue that their claim focuses on PharmPix's intent "to *compete* with Abarca in the same PBM market," and that it "stem[s] from Defendants' 'commercial advertising or promotion' . . . ."  (Docket No. 115, p. 5) (emphasis in original).

I do not find Plaintiffs' focus on the "proprietary software application" aspect of the advertising persuasive; as *Baden* observed, the term "relate[s] to ownership or control over something; the word[] presuppose[s] that someone owns the product or good being described." 2007 WL 2058673, at *6.   But viewing the complaint favorably to plaintiffs' claims, an action based on calling Pharmacy Agent "innovative" could fall outside the scope of *Dastar*.   For this reason, defendants are not entitled to dismissal of the unfair competition claims to the extent they are based on false allegations of "innovation."   I stress that this analysis does not preclude defendants from showing at summary judgment that the evidence does not support a cognizable unfair competition claim.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss under Rule 12(c) is **DENIED**.

Plaintiffs' motion to dismiss the counterclaim under Rule 12(b)(6) is **GRANTED IN PART**.

PharmPix's claims for attempted monopolization under federal and Commonwealth law, as well

as for unfair competition under the Puerto Rico Antitrust Act, are **DISMISSED.**   The motion to

dismiss PharmPix's claims for unlawful restraint of trade under federal and Commonwealth law

is **DENIED.**

  **IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2012.

       *S/ Bruce J. McGiverin*
       BRUCE J. McGIVERIN
       United States Magistrate Judge